[Civ. No. 57782. Second Dist., Div. One. Oct. 29, 1980.]

In re TANYA F., a Minor.
SANTA BARBARA COUNTY DEPARTMENT OF ADOPTIONS,
Petitioner and Respondent, v.
MARIA B. Objector and Appellant.

COUNSEL

Paul Arthur Turner, under appointment by the Court of Appeal, for Objector and Appellant.

George P. Kading, County Counsel, and Marvin Levine, Deputy County Counsel, for Petitioner and Respondent.

OPINION

HANSON (Thaxton), J.—Maria B. appeals an order of the trial court declaring her minor daughter, Tanya F., free of parental custody and control. (Civ. Code, § 232.)

FACTS

The County of Santa Barbara, Department of Adoptions (hereinafter referred to as the County) on November 19, 1978, filed a petition to have the minor declared free of the custody and control of her natural parents, Maria B. and David F. The petition alleged, inter alia, that Tanya F. had for more than two consecutive years prior to its filing been in one or more foster homes; that the parents had failed and were likely to fail in the future to provide a home or care and control for the child; and that it would be detrimental to the minor to be returned to her parents. The required report and recommendation of the probation officer was filed on May 24, 1979, and the trial court after considering the evidence, both oral and documentary, on June 12, 1979, rendered its decision that the petition be granted. Pursuant thereto the court on July 12, 1979, entered its order declaring Tanya F. free of the custody and control of both parents. An appeal was filed by her mother, Maria B.; there is no appeal by David F.

The trial court prepared and filed a lengthy memorandum of decision as well as findings of fact and conclusions of law in support of its order. The facts therein summarized, which are supported by the record, disclose that Tanya F. was born June 7, 1972. She resided with and was cared for by her maternal grandmother. Maria B. was convicted of forgery in 1974 and remained at the California Rehabilitation Center (hereinafter referred to as CRC) until September 1975. Tanya F. was with her mother when she was once again arrested for use of controlled substances in October 1975. Since the minor's father was in prison at the time, Tanya F. was placed in the foster care home of Sandra Everett and Jean Robbins on November 13, 1975, after a brief period in shelter care. Tanya F. was found to be a dependent ward of the juvenile court on December 15, 1975. She remained in that status and resided at the foster home continuously from that time to the date of the hearing.

Meanwhile, Maria B. was released from CRC. On January 29, 1976, she was returned to CRC and she was again released in November 1976. On September 21, 1977, she was arrested for burglary but re-

ceived no jail time. She was once more incarcerated on January 18, 1978, and was later released. On August 23, 1978, she was convicted of petty theft with prior convictions, a felony, and remained in prison on a two-year sentence at the time of the hearing. Maria B. visited her daughter four times during 1976. During the 1977 period while she was not incarcerated she saw Tanya F. three times; however, she did not visit her daughter during the entire period from March 1977 until June 30, 1978. She did not send birthday or Christmas gifts or cards and she made no telephone calls to the child or to the foster home.

Tanya F. was upset by visits from her mother and following placement in the foster home she expressed rejection and hostility toward her mother and grandmother. Tanya F. also expressed a desire to remain with and be adopted by her foster mother. In order to protect the child's psychological welfare, it was provided that visitation be supervised; however, visitation was neither prohibited nor unreasonably impeded. Maria B. made little or no effort to communicate with her daughter throughout this period. Maria B. received protective and rehabilitative services and counseling and attempts were made to develop plans to reunite the family but the extensive periods of incarceration and Maria B.'s drug addiction obstructed these efforts. The minor's father manifested no desire to seek custody, had no contact with Tanya F. and did not appear in court.

The court observed that the unrefuted evidence showed that Maria B. had failed to provide a home, to give care and control, or to establish and maintain an adequate parental relationship with Tanya F. and that it appeared unlikely she could do so in the future. Accordingly, the court concluded that clear and convincing evidence established all the elements required to be found in Civil Code section 232, subdivision (a)(7); that return of Tanya F. to the custody and control of either parent would be to her detriment; and that it was in the best interest and welfare of the minor that she be freed of the custody and control of her parents. Maria B. has appealed.

ISSUES

Maria B. contends that the trial court erroneously took judicial notice of the juvenile court file in the dependency proceedings, and that the court improperly applied the clear and convincing evidence rather than the beyond a reasonable doubt standard in reaching its decision.

## DISCUSSION

■ The trial court in taking judicial notice of the findings and orders of the juvenile court in the dependency proceedings did not, as Maria B. contends, abuse its discretion. Counsel for Maria B. refused to stipulate that the trial court might take judicial notice of the juvenile court records in the dependency proceedings. The court, concurring with counsel, declared that it would limit notice of those records. The judge stated: "[I] will only take judicial notice of certain documents. *Day verses Sharp* 50 Cal Ap 3d [*sic*] Those are just the findings which will establish the sequence of events which have already been stipulated to."

This court in its opinion in *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918], summarized the principles controlling judicial notice of court records as follows: "A trial court may properly take judicial notice of the records of any court of record of any state of the United States. (Evid. Code, § 452, subd. (d); *Flores v. Arroyo*, 56 Cal.2d 492, 496-497 [...].) But, as is stated in Jefferson, California Evidence Benchbook (1972) Judicial Notice, section 47.3, at page 840: 'Caveat: *Limitations on judicial notice of court records.* What is meant by taking judicial notice of court records? There exists a mistaken notice that this means taking judicial notice of the existence of facts asserted in *every document* of a court file, including pleadings and affidavits. However, a court *cannot* take judicial notice of *hearsay allegations* as being true, just because they are part of a court record or file. A court may take judicial notice of the *existence* of each document in a court file, but can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments.'" (Original italics.)

It is clear that the trial court in the present case did not exceed its limitations but took judicial notice only of those facts asserted in orders and findings.

■ Maria B. further contends that the trial court erred in applying the clear and convincing evidence standard rather than requiring that petitioner meet the highest burden of proof, that of beyond a reasonable doubt, in reaching its decision to declare Tanya F. free of parental custody and control. In making this argument Maria B. relies upon the reasoning of *In re Angelia P.* (Cal.App. May 1, 1980, 3 Civ. 18243) in which the appellate court concluded that due process requires applica-

tion of the beyond a reasonable doubt standard in such proceedings. We note, and appellant acknowledges, that a hearing has been granted in that case by the California Supreme Court. As a consequence, there is no current legal authority to support the application of this standard to proceedings to free a child from parental custody and control.

To the contrary, Civil Code section 232, subdivision (a)(7), under which the present proceeding was initiated, expressly provides that freedom from parental custody and control may be ordered for a minor of the following description: "Who has been cared for in one or more foster homes, residential facilities licensed pursuant to Chapter 3 (commencing with Section 1500) of Division 2 of the Health and Safety Code, or health facilities licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the Health and Safety Code, under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds by clear and convincing evidence that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to do the following:

"(i)  Provide a home for the child;

"(ii)  Provide care and control for the child; and

"(iii)  Maintain an adequate parental relationship with the child.

"Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period."

The question of the proper standard of proof in proceedings such as the case at bench was resolved in *In re Heidi T.* (1978) 87 Cal.App.3d 864 [151 Cal.Rptr. 263]. The appellate court acknowledged that the nature of the proceedings presented due process considerations and had far reaching consequences for parent and child. Nonetheless, both current legislation and legal precedent establish that the current standard of proof is clear and convincing evidence. (See *In re Cynthia K.* (1977) 75 Cal.App.3d 81, 85-86 [141 Cal.Rptr. 875]; *In re George G.* (1977) 68 Cal.App.3d 146, 165, fn. 14 [137 Cal.Rptr. 201]; *In re Robert P.* (1976) 61 Cal.App.3d 310, 318 [132 Cal.Rptr. 5]; *In re Rose G.* (1976) 57 Cal.App.3d 406, 420 [129 Cal.Rptr. 338].)

Civil Code section 232, subdivision (a)(7), is clear and in its present express form it provides for the use of the clear and convincing standard of proof in section 232, subdivision (a)(7), proceedings. That language defies judicial interpretation.

### DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Auerbach, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.